**FEE SIMPLE, INC., a Delaware corporation, Plaintiff,**

v.

**COLONY SURF, LTD., a Hawaii corporation; Frank E. Walton; Paul B. Slater; and Mary Jane Jocelyn, Third–Party Plaintiff,**

Colony Surf Development Corporation, a Hawaii corporation and Charles John Barkhorn, Jr., Third–Party Defendants.

**Civ. No. 86–1112.**

United States District Court, D. Hawaii.

Jan. 21, 1988.

James Stubenberg, Steven Shinn, Jonathan Durrett, Honolulu, Hawaii, for plaintiff.

William M. Swope, Patricia U. Wong, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for Colony Surf, Ltd., Frank Wilson, Paul Slater and Mary Jane Jocelyn.

James Sattler, Robert Scarlett, Honolulu, Hawaii, for Colony Surf, John Backhorn.

## ORDER DENYING MOTION TO DISMISS COUNTERCLAIM FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FOR FAILURE TO PLEAD WITH PARTICULARITY AND/OR FOR SUMMARY JUDGMENT

KAY, District Judge.

### I.

Plaintiff moves the Court to dismiss Defendant's counterclaim on the grounds that Defendant has failed to state a claim upon which relief can be granted and has failed to plead with specificity its elements of damages and the alleged acts of fraud committed by Plaintiffs. In the alternative, Plaintiff requests that summary judgment be awarded. Third party defendants Colony Surf Development Corp. and Charles John Barkhorn, Jr. have filed a joint statement of no opposition to this motion.

### II.

The Colony Surf Apartments, a cooperative located in Waikiki, was developed by third party defendant Colony Surf Development Corporation ("Development"). Development formed Colony Surf Limited ("Limited"), a cooperative stock corporation, to manage and control Colony Surf Apartments. Legal title to the apartments is held by Limited, and each share of stock of Limited carries with it the right to sublease a specific apartment in Colony Surf. Charles John Barkhorn, a third party defendant, was the original president of Development, and a former president of Limited. Barkhorn negotiated and executed long-term leases on behalf of Development for portions of Colony Surf's common areas, and Development currently uses these areas for commercial activities, including a restaurant and bar. Development also operates a hotel by renting out apartments on a short-term basis.

The Colony Surf Apartments are built on four separate lots which are owned by several different people. In 1985, Limited began negotiations with Eleanor Peacock for the purchase of one of these lots ("Peacock property"); since lease rents had been rising, and Limited sought to purchase the properties upon which Colony Surf was built. At an annual stockholders meeting in March, 1985, an informal poll indicated (35 to 3) that stockholders wished to consider purchasing the land. At a Board of Director's meeting on October 16, 1985, Frank Walton, president of Limited, suggested that the directors solicit input from shareholders regarding purchase of Mrs. Peacock's property. In November the Board of Directors sent a letter to each shareholder asking approval of their plan to purchase, and requesting a response within 24 hours. Ninety-seven of the apartments responded to the request, with ninety-four approving the purchase, and two disapproving (one apartment was being sold).

At a special Board meeting on December 2, 1985, the directors present unanimously approved a resolution requesting Limited's attorney to proceed with negotiations for the purchase of the Peacock property. At the next regular meeting of the Board on December 18, 1985, it was reported that 111 apartment units had approved the purchase, with two units disapproving. The Board resolved to meet with Barkhorn regarding the purchase, but attempts to meet with him failed. On January 15, 1986, the Board authorized Limited's attorney to proceed with the negotiations on the property. A few days later, Limited executed a Deposit, Receipt, Offer and Acceptance to purchase the Peacock property. This was submitted to Mrs. Peacock's attorney, who was informed that the offer was unconditional.

On February 5, 1986, the Peacock property was conveyed from Mrs. Peacock to plaintiff Fee Simple, Inc. Limited and its shareholders had no knowledge of negotiations between Mrs. Peacock and Fee Simple for the sale of the property until that sale had been finalized.

Fee Simple, Inc. is a wholly owned subsidiary of Development, and was incorpo-

rated on January 13, 1986 at the instigation of Barkhorn for the purpose of acquiring the Peacock property. The president, treasurer, and sole director of Fee Simple, Inc. is James Stubenburg, who is Fee Simple's attorney and formerly the attorney for Barkhorn and Development.

The present case was filed by Fee Simple, Inc. against Limited and various directors of Limited to enjoin Limited from obtaining the approval of its shareholders to file a lawsuit against Development with regard to the Peacock property purchase, and requesting damages for negligence alleged to have occurred in the course of soliciting shareholder approval for the litigation.

The counterclaim in issue in this motion was filed against Fee Simple for breach of fiduciary duty, negligence, breach of duty of good faith and fair dealing, negligent and/or intentional misrepresentation and/or fraud, unfair and unlawful business practices, unjust enrichment, civil conspiracy, and declaratory judgment, all of which are based on Fee Simple's usurpation of a corporate opportunity of Limited in purchasing the Peacock property without Limited's knowledge and approval.

### III.

Since both parties have submitted affidavits in support of and in response to the present motion to dismiss the counterclaim for failure to state a claim upon which relief can be granted, this court will treat the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(c). In order to grant a motion for summary judgment this court must find, viewing the evidence in the light most favorable to Limited, and making all reasonable favorable inferences from those facts, that Limited would still as a matter of law not be entitled to relief. *T.W. Electrical Serv. v. Pacific Electrical*, 809 F.2d 626 (9th Cir.1987).

Limited has proffered evidence indicating that Barkhorn, Development, and Fee Simple should be considered as a single entity, as alter egos, for purposes of this motion. This evidence indicates that Barkhorn was involved in the incorporation of Fee Simple and the purchase by Fee Simple of the Peacock property. In addition, there is evidence that the stock of Development is currently tied up in a transaction the result of which will place the stock in a trust, the beneficiaries of which are Barkhorn, his wife and son.

Assuming, then, that Fee Simple, Development, and Barkhorn are a single entity, the issue is whether the relationship between Development, Barkhorn, and Limited is such that Development and Barkhorn owe a fiduciary duty to Limited, especially with regard to the purchase of the Peacock property. Most of the facts presented by the parties in support and in opposition to the present motions appear to be undisputed. It is the reasonableness of inferences from those facts which is disputed by the parties. All parties agree that Development is the largest single shareholder of Limited, owning 28 out of a total of 171 shares. Barkhorn is a former director and president of Limited, although he has not served in that capacity for thirteen years. Development was the developer of Colony Surf. Development currently leases large portions of the common areas of colony Surf at below market rates.

It appears from the facts presented, viewed most favorably to Limited, that the existence of a fiduciary duty could be reasonably inferred. A cooperative apartment corporation such as Limited could fit into the category of a close corporation. There can hardly be a closer relationship among shareholders than is to be expected in a cooperative apartment building, with the shareholders dependent upon each other not only for mutual economic or business interests, but for the nature and quality of their home life. Although this cooperative is relatively large, this does not diminish the responsibilities which are inherent in the relationship among neighbors. This is evident in the way the cooperative is managed; although the shareholders elect a board of directors to take on directly the management of the cooperative, the directors still apparently seek input and direction from the shareholders. In the facts surrounding the present dispute, the board

of directors sought the approval of the shareholders before pursuing the purchase of the Peacock property, even though, according to the letter sent to the shareholders by the board, such was not technically required. In addition, the board apparently postponed making an offer on the property so that it could seek the input of Barkhorn, but such meeting failed to materialize. It is this close relationship between shareholders and management, implied in the structure of the apartment cooperative, which indicates that Limited may be classified as a close corporation. *See Thisted v. Tower Management Corporation,* 147 Mont. 1, 409 P.2d 813 (Mont.1966).

The actions of Barkhorn and Development, and through them, Fee Simple, could reasonably be seen as a breach of the duty of shareholders in a close corporation. In *Toledo Trust Co. v. Nye,* 426 F.Supp. 908, 912 (N.D.Ohio 1977); reversed on other grounds, 588 F.2d 202 (6th Cir.1978), Lantana, a closely held corporation, offered to purchase land from a third party, and a counteroffer from that third party was received. Three of the four shareholders of Lantana formed another corporation (c–N–k Corp.) which purchased the property, and then rented that property to Lantana for more than the payments on the property would have been. In holding that the shareholders of c–N–k held their interests in c–N–k subject to a trust in favor of Lantana, the court stated that "[s]eldom, if ever, has this Court seen so flagrant and transparent a scheme to 'milk the cow' as this one. There is not a shred of evidence that Lantana was incapable of taking advantage of this corporate opportunity. [The three shareholders] violated their duty to the plaintiff by appropriating this opportunity to themselves through the device of organizing c–N–k." *Id.*

Therefore, the court finds that there are material issues of fact sufficient to prevent entry of summary judgment.

 Fee Simple also moves to dismiss the counterclaim for failure to plead fraud with particularity, alleging that Limited has failed to state the facts constituting the fraud sufficiently. It is true, as assert-

ed by Fee Simple, that fraud allegations must be stated with particularity, *Bosse v. Crowell, Collier & MacMillan,* 565 F.2d 602 (9th Cir.1977). In this case, Limited has adequately stated the fraud claim by alleging both a duty to disclose particular information (the impending purchase of the Peacock property), and a failure to do so. Limited will not need to rely on discovery to ascertain the existence of the fraud alleged. *Elster v. Alexander,* 75 F.R.D. 458 (N.D.Ga.1977). In addition, Limited has adequately stated a claim for damages; it is not true that simply because Limited's rent has not yet increased that there has been no damage caused by the allegedly usurped corporate opportunity.

Accordingly, it is hereby ORDERED that Plaintiff Fee Simple, Inc.'s Motion to Dismiss Counterclaim for Failure to State a Claim Upon Which Relief Can Be Granted and for Failure to Plead With Particularity and/or for Summary Judgment is DENIED.